Constance Chaix INDEST,
Plaintiff-Appellant,

v.

FREEMAN DECORATING, INC. and
Larry Arnaudet, Defendants-
Appellees.

No. 96–30212.

United States Court of Appeals,
Fifth Circuit.

Feb. 26, 1999.

Before JONES and WIENER, Circuit Judges, and FURGESON *, District Judge.

* District Judge of the Western District of Texas, sitting by designation.

WIENER, Circuit Judge, Specially Concurring:

Like my able colleague, Judge Jones, I would affirm the district court's dismissal of Indest's claim against her supervisor, Arnaudet, pursuant to Rule 12(b)(6). And like Judge Jones, I would also affirm the court's dismissal of Indest's claims against Freeman by granting its motion for a judgment as a matter of law (j.m.l.), albeit I would do so—as would Judge Jones—for reasons other than those given by the district court. But, as I would affirm the district court's j.m.l. for significantly different reasons than those advanced by Judge Jones, I write separately.[1]

In short, I cannot agree with Judge Jones's conclusion that the Supreme Court's remarkably straightforward and perfectly consistent twin opinions in *Burlington Industries, Inc. v. Ellerth*[2] and *Faragher v. City of Boca Raton*[3] do not control the present case—and, indeed, all cases in which the plaintiff seeks to hold his employer vicariously liable for a supervisor's sexual harassment. As I read them, the Court's two opinions together set forth a comprehensive framework for determining when an employer can be held vicariously liable for sexual harassment by a supervisor—a framework into which the instant case fits comfortably.

Under the *Ellerth/Faragher* rubric, an employer is vicariously liable for a supervisor's actionable hostile environment[4] sexual harassment of an employee unless the employer can prove *both* elements of the one and only affirmative defense now permitted by the Court. Those essential elements are defined by the Court as:

(a) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) the employee [ ] unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.[5]

As it is undisputed that Freeman cannot satisfy the second element of this defense—that Indest unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise—Freeman is vicariously liable to Indest; *unless*, of course, Indest cannot prove that the conduct of the supervisor, Arnaudet, was "sufficiently severe or pervasive"[6] to constitute "actionable" sexual harassment of the hostile work environment kind. For, if Arnaudet's conduct does not rise to the level of actionable sexual harassment, Indest cannot recover from Freeman in agency.

As I conclude that Arnaudet's conduct was neither severe nor pervasive, I would affirm the district court for Indest's failure to demonstrate that Arnaudet's behavior constituted actionable sexual harassment in the first place. Such a result is compelled in this hostile work environment case (no tangible employment action), because, in such a case, proving the supervisor's conduct was "severe or pervasive", i.e., "actionable" harassment, is the threshold for recovery from an employer on a theory of vicarious liability. I am convinced, however, that in light of *Ellerth* and *Faragher*, we cannot affirm the district court's rejection of Indest's claim solely on the basis of Freeman's prompt and adequate response to Indest's report of Arnaudet's

1. Because Judge Ferguson concurs only in the judgment of this case without concurring in Judge Jones's opinion or mine, neither enjoys a quorum and thus neither writing constitutes precedent in this Circuit.

2. 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

3. 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

4. Although the Court in *Ellerth* notes that the terms "hostile environment" and "quid pro quo" had taken on a significance beyond their utility in the wake of its opinion in *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the Court instructs that henceforth those terms' only utility will be to mark a useful boundary between supervisor sexual harassment cases involving "tangible employment actions" against the victim (quid pro quo), *see infra* note 19, and those in which the actionable conduct fails to produce a tangible employment action (hostile work environment). *Ellerth*, 118 S.Ct. at 2264–65.

5. *Faragher*, 118 S.Ct. at 2292; *Ellerth*, 118 S.Ct. at 2270.

6. *Ellerth*, 118 S.Ct. at 2264.

inappropriate behavior (as would Judge Jones, without any mention whatsoever of the second element of the sole affirmative defense now available). Given that (1) Judge Jones has conceded *arguendo* that the harassment produced a "severe or pervasive" work place, and (2) the undisputed facts of the case demonstrate that Indest quickly reported Arnaudet's behavior, thereby defeating the only affirmative defense potentially available to Freeman, Judge Jones's exoneration of Freeman's vicarious liability on but one element of the Court's new and exclusive two-element, conjunctive defense cannot survive scrutiny under *Ellerth/Faragher*.

## I.

Facts, Proceedings, and Standard of Review

As I take no issue with Judge Jones's rendition of the facts, procedural history, standard of proof, or standard of review, I touch on those matters only briefly, for focus and emphasis. First, nothing in the record or in the appellate briefs of the parties reflects any business or personal interaction between Arnaudet and Indest prior to the New Orleans convention of September 8–14, 1993, at which the putative harassment is alleged to have transpired. Second, the harassment that Indest alleged consisted solely of five sexual comments or gestures, and did not culminate in a tangible employment action. Third, Arnaudet's behavior was reported to Freeman by Indest almost instantly, even before she left the convention to return home. Fourth, there is no disagreement with the characterization of Arnaudet as a mid-level supervisor: As Vice President of Sales and Administration and, in particu-

lar, as the Freeman executive in charge of the New Orleans convention, Arnaudet was in a position to affect significantly the conditions of Indest's employment.[7] Finally, the scant evidence in the record of the only prior incident of purported sexual harassment by Arnaudet of a "Jane Doe" employee of Freeman is insufficient to support an allegation that Freeman (1) knew or should have known that Arnaudet had previously harassed another employee, and (2) failed to prevent a recurrence.

## II.

Employer's Vicarious Liability for Actionable Sexual Harassment by a Supervisor

Last term, the Supreme Court decided four cases that together reshape, or at a minimum substantially clarify, the landscape of sexual harassment law.[8] Most significantly for our purposes, two of those cases—*Ellerth* and *Faragher*—address the burgeoning issue of the employer's vicarious liability under Title VII for the sexual harassment of an employee by a supervisor. Because I respectfully but strenuously differ with Judge Jones as to the meaning, scope, and import of these tandem opinions, I discuss them in some detail. First, however, because I failed to file my separate opinion contemporaneously with hers, I briefly recount Judge Jones's position.

### A. *Judge Jones's Analysis*

Judge Jones's opinion (1) assumes *arguendo* that the alleged harassment at issue in this case was "sufficiently severe or pervasive"[9] to constitute actionable sexual harassment[10]—an assumption to which I shall re-

7. See *Faragher*, 118 S.Ct. at 2293 ("An employer is subject to vicarious liability for an actionable hostile environment created by a *supervisor with immediate (or successively higher) authority over the employee*.") (emphasis added); *Ellerth*, 118 S.Ct. at 2270

8. See *id.* at 2293–94 (holding city vicariously liable as employer for harassment of lifeguard by her supervisor because city failed to exercise reasonable care to prevent harassing behavior); *Ellerth*, 118 S.Ct. at 2270 (holding employee could state claim against employer although she had suffered no adverse job consequences as a result of alleged sexual harassment by supervisor); *Gebser v. Lago Vista Ind. Sch. Dist.*, 524

U.S. 274, 118 S.Ct. 1989, 1999–2000, 141 L.Ed.2d 277 (1998) (holding school was not vicariously liable under Title IX for teacher's sexual harassment of student when school had no notice of harassment); *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 118 S.Ct. 998, 1003, 140 L.Ed.2d 201 (1998) (holding same-sex harassment is actionable).

9. *Ellerth*, 118 S.Ct. at 2264.

10. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 263–64 (5th Cir.1999) (Jones, J.) [hereafter, Jones Op.].

turn; and (2) concludes that the *Ellerth /Faragher* teachings do not dictate the result of the present appeal.[11] Judge Jones bases this conclusion on her belief that *Ellerth* and *Faragher* are factually distinguishable from the instant case because "both involve complaints of *longstanding* supervisor misbehavior, and the plaintiffs either never utilized or claimed not to be aware of company ·policies," whereas Ms. Indest quickly resorted to Freeman's sexual harassment grievance procedure and Freeman promptly took remedial action that prevented Arnaudet's short-lived harassment of Indest from continuing long term.[12] To distinguish and cordon off Indest's brief but presumed "severe or pervasive" harassment experience so as to remove her case from the purview of *Ellerth/Faragher*, Judge Jones has coined the phrase "incipient hostile environment."[13] As shall be seen, she advances that this new coin is not among those rightfully in the purses of Ms. Ellerth or Ms. Faragher, and proceeds to remove cases like Ms. Indest's from the aegis of *Ellerth* and *Faragher* —as neat an illusion as any sleight-of-hand artist ever created with a real coin.

Judge Jones then proceeds to replace, with one of her own, the Supreme Court's balancing of what it identifies as relevant agency principles on the one hand and Title VII policy concerns on the other. After performing her own balancing test in lieu of the Court's, Judge Jones concludes that alone Freeman's quick and adequate response to Indest's equally prompt and adequate reporting of Arnaudet's behavior is sufficient to insulate Freeman from vicarious liability for Arnaudet's harassment of Indest.[14] By thus choosing to disregard totally the Supreme Court's express and carefully explained linking of (1) the employer's prompt and appropriate response with (2) the employee's unreasonable *failure* to invoke the employer's complaint mechanism or otherwise take prompt mitigating action, Judge Jones somehow implicitly concludes that this harass-

ment's "incipient" nature—whatever that is—alleviates Freeman's need to satisfy the second element of *Ellerth* and *Faragher*'s sole surviving affirmative defense, i.e., the requirement to prove that Indest unreasonably failed to take advantage of Freeman's sexual harassment grievance policy. Judge Jones never adequately explains away the obvious inconsistency of granting "severe and pervasive" status to the work environment produced by Arnaudet's conduct while labeling the effects of that very same conduct "incipient." Post-*Ellerth* and *Faragher*, this is a logical impossibility which, I submit, cannot be squared with the pellucid teachings of those opinions.

### B. *Ellerth* and *Faragher*

Simply stated, then, I part company with Judge Jones because I can find no support in *Ellerth* or *Faragher* for her conclusion that those cases do not control this one. In neither opinion does the Court even remotely hint that it is limiting its analysis to situations in which (1) the plaintiff employee has failed to inform an employer of harassing behavior, and (2) the employer has failed to take prompt remedial action (i.e., to Judge Jones's view of the facts of *Ellerth* and *Faragher* ). More importantly, nowhere does the Court imply, much less express, that short-lived harassment such as the conduct alleged by Indest—in which, soon after the onset of the harassment, the plaintiff reports the inappropriate behavior and the employer rapidly and appropriately responds to that report—somehow falls outside the ambit of the Court's mandate. To the contrary, in both the *Ellerth* and *Faragher* opinions, the Court unmistakably addresses itself to the entire spectrum of an employer's vicarious liability under Title VII for supervisory harassment *writ large*, not just to some lesser fragment of that statutory problem, to which Judge Jones would curtail it.

---

11. *Id.* at 265.

12. *Id.* (emphasis added).

13. *Id.* Judge Jones does not define her newly-minted term. Apparently, however, the phrase does not simply refer to conditions that are not

yet sufficiently severe or pervasive to constitute an actionable hostile environment, as Judge Jones, by her assumption, preempts our resolution (though not discussion) of that issue.

14. *Id.* at 267.

## 1. *Ellerth*

From the inaugural lines of the *Ellerth* opinion, the Court makes clear that its focus is not narrowly confined to the discrete facts of Ellerth's allegations (whether as parsed by Judge Jones or otherwise). The Court opens:

> We decide whether ... an employee who refuses unwelcome and threatening sexual advances of a supervisor, yet suffers no adverse, tangible job consequences, can recover against the employer without showing the employer is negligent or otherwise at fault for the supervisor's actions.[15]

*Ellerth* involves allegations by a plaintiff-employee (Ms. Ellerth) who, during the approximately year-long period that she worked as a salesperson for the defendant-employer (Burlington Industries), had been subjected to a number of boorish and offensive remarks and gestures by her supervisor (Ted Slowik).[16] Ellerth based her claim against Burlington in large part on three alleged incidents in which Slowick made comments that could be construed as threats to retaliate against her if she did not give in to his sexual advances.[17] Despite these threats, though, Ellerth never experienced any adverse employment consequences; in fact, she received a promotion.[18]

In determining whether Burlington could be held vicariously liable for Slowik's conduct even though his threats never resulted in a tangible employment action against his subordinate,[19] the *Ellerth* Court confronts the previously unresolved question of what standards govern an employer's *respondeat superior* liability for sex-based discrimination by one of its supervisory employees.[20] The Court had touched on this critical issue in its pathbreaking decision in *Meritor Savings Bank v. Vinson*,[21] but indicated only that, based on the text of Title VII, agency principles are relevant to the inquiry.[22]

Taking *Meritor*'s admonition as its starting point, the Court in *Ellerth* engages in a wide-ranging analysis of the relevant agency principles set forth in § 219 of the Restatement (Second) of Agency.[23] The Court determines that, when an employee seeks to hold an employer vicariously liable for a supervisor's conduct rather than directly liable for its own conduct,[24] Restatement

---

15. *Ellerth*, 118 S.Ct. at 2262. Again, painting with a broad brush that belies Judge Jones's effort to cabin the opinion, the Court later frames its inquiry as "whether an employer has vicarious liability when a supervisor creates a hostile work environment by making explicit threats to alter a subordinate's terms or conditions of employment, based on sex, but does not fulfill the threat." *Id.* at 2265. The Court makes no mention of the extent or duration of the inappropriate conduct.

16. *Id.* at 2262.

17. *Id.*

18. *Id.*

19. *Id.* Tangible employment actions "require[] an official act of the enterprise, a company act," *id.* at 2269, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 2268.

20. *Id.* at 2264. From a plaintiff-employee's perspective, there are, of course, two categories of potential employee harassers—supervisors and co-workers. Neither the instant case nor *Ellerth* or *Faragher* involved harassment by co-workers.

21. 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (holding hostile environment sexual harassment is actionable form of sexual discrimination under Title VII).

22. *Id.* at 72, 106 S.Ct. 2399. The *Meritor* Court rejected arguments of both plaintiff—that employer is strictly liable for harassment by its supervisor—and of defendant—that mere existence of discrimination grievance procedure, coupled with plaintiff's failure to invoke that procedure, insulates employer from liability. *Id.* at 72–73, 106 S.Ct. 2399.

23. Restatement (Second) of Agency § 219 (1957).

24. To hold an employer liable for its own negligent conduct, an employee must show that the employer knew of the harassment and failed to stop it. *Ellerth*, 118 S.Ct. at 2267; *see also Faragher*, 118 S.Ct. at 2284 (noting employer can be held liable (1) for own negligence and (2) for the acts of an official who may be treated as the organization's proxy). The Court additionally determined that sexual harassment by a supervisor is not generally conduct falling within the scope of the supervisor's employment under § 219(1), thus subjecting an employer to automatic liability, though it noted that such a scenario is not out of the realm of possibility. *Ellerth*, 118 S.Ct. at 2266–67 (citing *Sims v.*

§ 219(2)(d)'s "aided in the agency relation" standard is the most relevant;[25] and concludes that, "beyond question," an employee satisfies this standard by proving that the supervisor took a tangible employment action against the subordinate, as such an action would not be possible but for the authority granted to the supervisor over the employee by the employer.[26] Thus, when a tangible employment action results (by definition post-*Ellerth / Faragher*, a quid pro quo case), the Court follows strict agency principles and permits no affirmative defense to the employer's vicarious liability.

To resolve the more difficult issue—whether the agency relation aids in the commission of a supervisor's harassment that does *not* culminate in a tangible employment action against the subordinate employee—the Court takes additional, mitigating guidance from Title VII's twin deterrent goals of (1) encouraging employers to institute antiharassment policies and effective grievance procedures, and (2) encouraging employees to make timely and appropriate use of such procedures and report harassing behavior.[27] Markedly absent from this entire discussion is any reference—much less any restriction—to the particular facts of Ellerth's case. The Court's focus is squarely on the big picture.

Finally, after balancing the relevant concerns,[28] the Court unconditionally and unequivocally concludes:

An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. *The defense comprises two necessary elements:* (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, *and* (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.[29]

Again, nothing in the *Ellerth* opinion intimates that the Court is narrowly limiting its analysis or its test to the facts before it.[30] To the contrary, the Court (1) frames the issue presented without reference to the factual nuances on which Judge Jones relies in her effort to distinguish the instant case from *Ellerth;* (2) analyzes both the Restatement's relevant agency principles and Title VII policy goals in terms of the general question of an employer's vicarious liability for a supervisor's harassment; (3) formulates straightforward and unqualified bright-line rules covering an employer's "vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor";[31] and

*Montgomery County Comm'n,* 766 F.Supp. 1052, 1075 (M.D.Ala.1990) (finding supervisor acted in scope of employment when employer had policy of discouraging women from seeking advancement and "sexual harassment was simply a way of furthering that policy.")).

25. Section 219(2)(d) provides that an employer is liable for torts committed by its employee for acts committed outside the scope of the employee's employment if the employee "was aided in accomplishing the tort by the existence of the agency relation."

26. *Ellerth,* 118 S.Ct. at 2268.

27. *Id.* at 2270.

28. In the sentence preceding the announcement of its new test, the Court states: "In order to accommodate the agency principles of vicarious liability for harm caused by misuse of supervisory authority, as well as Title VII's equally basic policies of encouraging forethought by employers

and saving action by objecting employees, we adopt the following holding in this case and in *Faragher v. Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), also decided today." *Id.*

29. *Id.* (emphasis added).

30. The Court, of course, applies its newly-created standard to the facts before it, holding that *Ellerth* had stated a claim against Burlington, but that Burlington should be afforded the opportunity to prove the affirmative defense to liability. *Id.* at 2271.

31. *Id.* at 2270. That the *Faragher* Court took occasion to identify avenues for holding an employer liable for harassment by one of its employees other than vicarious liability, *see supra* note 24 (employer can be held liable for own negligence or for employee harassment falling within scope of employee's duty), lends further support

(4) specifically dictates the role of the factor Judge Jones finds controlling in the present case—the reasonableness of the employer's efforts to prevent and address harassment—by placing it within the confines of the Court's unique, double-element, affirmative defense to vicarious liability for cases in which no tangible employment action has been taken against the plaintiff. Importantly, the Court also makes the *failure* of the employee to act promptly and effectively an equal and indispensable element of this defense; yet Judge Jones would permit the employer's extant grievance system and quick action to save the day *even when* the employee too timely takes appropriate steps. This cherry-picking of but one of two conjoint elements of the defense flies directly in the face of identical statements to the contrary in each of the two Supreme Court opinions.[32]

### 2. *Faragher*

The *Faragher* opinion follows a path virtually identical to *Ellerth*'s. It too frames the question presented as one involving the broad issue of an employer's vicarious liability for harassment by a supervisor: "This case calls for the identification of the circumstances under which an employer may be held liable under Title VII ... for the acts of a supervisory employee whose sexual harassment of subordinates has created a hostile work environment amounting to employment discrimination."[33] Like *Ellerth,* Faragher analyzes the issue without reference to the limitations Judge Jones would impose.[34] Finally, of course, *Faragher* espouses verbatim the *Ellerth* test and sole affirmative defense for vicarious liability in supervisor sex discrimination cases.[35]

Indeed, as it explicitly adopts and precisely repeats *Ellerth*'s two-element, affirmative defense as an *"alternative to [an employer's] automatic liability",* the Court indicates in *Faragher* even more clearly than it does in *Ellerth* that its newly-articulated test applies to *all* cases in which an employee who has not suffered an adverse employment action seeks to hold the employer vicariously liable for purported harassment by a supervisor (rather than excluding some subset of such cases delimited by the absence of the employee's prompt report of the inappropriate conduct or the presence of the employer's quick response to such behavior by the supervisor—or both).[36] In other words, the Court designed its "composite defense"[37] as the *only* hatch through which an employer might escape vicarious liability when "harassment by a supervisor [ ] creates the requisite degree of discrimination."[38]

### 3. Teachings of *Ellerth* and *Faragher*

In sum, I respectfully submit that neither the structure nor the plain language and holding of either *Ellerth* or *Faragher* supports Judge Jones's conclusion that cases such as this one, in which an employee promptly reports, and an employer rapidly responds to, harassing behavior by a supervisor, fall into some unarticulated lacuna in the *Ellerth/Faragher* framework. I am convinced that this framework, and only this framework, controls our analysis.

### C. *Merits*

Here, of course, the district court did not—indeed, could not—assay Indest's claim against Freeman under the Supreme Court's as yet unannounced *Ellerth/Faragher* framework. Nevertheless, when there are no gen-

---

to the conclusion that the Court fixed its sight on the entirety of the global issue before it—vicarious liability—rather than some unidentified shard of the sexual harassment issue.

**32.** *See Faragher,* 118 S.Ct. at 2292–93; *Ellerth,* 118 S.Ct. at 2270.

**33.** *Faragher,* 118 S.Ct. at 2279.

**34.** *Id.* at 2286–93 (examining arguments in favor and against holding employer strictly liable for supervisor's conduct); *see also id.* at 2282

("Since our decision in *Meritor,* Courts of Appeals have struggled to derive *manageable standards to govern employer liability for hostile environment harassment perpetrated by supervisory employees.*") (emphasis added).

**35.** *Id.* at 2292–93.

**36.** *Id.* at 2292.

**37.** *Id.*

**38.** *Id.* at 2291.

uine issues of material fact, we may affirm the district court's grant of a j.m.l. on different grounds.[39]

As already noted, there is no question that (1) Arnaudet was a supervisor with immediate (or successively higher) authority over Indest, and (2) no tangible employment action was taken against Indest. Significantly, it is equally indisputable that Indest did not unreasonably delay or fail to take advantage of any preventive or corrective opportunities provided by Freeman or fail to take appropriate action to avoid harm otherwise: As Judge Jones confirms, Indest reported Arnaudet's conduct almost immediately. Under the *Ellerth/Faragher* framework, this fact alone interdicts any attempt by Freeman to assert the one surviving affirmative defense and exposes the invalidity of excusing Freeman solely on the basis of its grievance system and prompt response, as proposed by Judge Jones.

Even so, our inquiry is not at an end. Inasmuch as Indest did not suffer a tangible employment action, she can hold Freeman vicariously liable only if she can prove that Arnaudet's conduct created an *"actionable* hostile environment."[40] As the Supreme Court held in *Harris v. Forklift Systems, Inc.,*[41] to satisfy this test, the conduct in question must have been so "severe or pervasive" that it altered the terms and conditions of Indest's employment.[42] The Court explicitly reconfirmed this requirement in both *Ellerth*[43] and *Faragher.*[44] As a key diversion in her legal legerdemain, Judge Jones

pretermits consideration of this point by assuming *arguendo* that the supervisor's conduct was actionable, i.e., severe or pervasive. This ploy enables her to label the incident as "incipient" essentially because it was so short-lived. Yet we and other courts have recognized that, alone, the duration of sexually offensive misconduct is not determinative; it is merely one factor to consider.[45] Any doubt about the inability of the duration of the harassment alone to be determinative is dispelled by the Court's continued use of the disjunctive "severe *or* pervasive"; indeed, sexually harassing conduct that is "severe" but not "pervasive" is by definition short-lived, Judge Jones's implication to the contrary notwithstanding. With due respect to my worthy colleague, I can only read *Ellerth* and *Faragher* to specify that, in cases that do not involve a tangible employment action, the threshold question is whether the supervisor's misconduct is actionable, i.e., either severe or pervasive. If that question is answered in the negative, the court can never reach the questions (1) whether the employer is vicariously liable, and (2) if so, whether the employer is able to avoid such liability by satisfying the affirmative defense crafted by the Court in *Ellerth* and *Faragher.*

To determine whether conduct is sufficiently severe or pervasive to create an objectively hostile or abusive work environment, we must examine the totality of the circumstances. These include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

---

39. *Cf. Rizzo v. Children's World Learning Ctr., Inc.,* 84 F.3d 758, 763 (5th Cir.1996).

40. *Faragher,* 118 S.Ct. at 2292–93; *Ellerth,* 118 S.Ct. at 2270 (emphasis added).

41. 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

42. *Id.* at 21, 114 S.Ct. 367.

43. *Ellerth,* 118 S.Ct. at 2265 ("For any sexual harassment preceding the employment decision to be actionable, however, the conduct must be severe or pervasive.")

44. *Faragher,* 118 S.Ct. at 2283–84 (summarizing *Harris* standards for proving hostile environment claim and citing compilation of cases "granting

summary judgment for employers because harassment was not actionably severe or pervasive") (citation omitted).

45. *See, e.g., Butler v. Ysleta Ind. Sch. Dist.,* 161 F.3d 263, 269 (5th Cir.1998)(listing "frequency of discriminatory conduct" as but one factor to consider and stating it should not be given "undue weight"); *Lockard v. Pizza Hut, Inc.,* 162 F.3d 1062, 1072 (10th Cir.1998)("We therefore disagree with defendants' assertions that a single incident of physically threatening conduct can never be sufficient to create an abusive environment."); *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 768 (2d Cir.1998)("[E]ven a single incident of sexual assault sufficiently alters the conditions of the victim's employment ....") (citation and quotation omitted) (alteration in original).

whether it unreasonably interferes with an employee's work performance."[46]

Indest alleges that, over a period that admittedly spanned less than one week, Arnaudet made five separate crude sexual comments or gestures to her and made statements that could be understood as ultimatums to "come across" with sexual favors or suffer adverse employment consequences. None dispute that Arnaudet's behavior was clearly embarrassing and contemptible, boorish and offensive. Under our jurisprudential standards, though, it was just as clearly not pervasive; neither did it even approximate the level required to be classified as severe. As such, Arnaudet's conduct does not constitute actionable sexual harassment.[47] True, sexual comments alone can rise to the level of actionable harassment.[48] Still, the mixed question of fact and law that we review de novo today—whether the relatively few remarks and gestures made during the relatively short duration of the New Orleans convention at which Indest was subjected to them, were so severe or pervasive as to alter the terms and conditions of Indest's employment within the meaning of Title VII—is, to me, susceptible of but one answer: No.[49] It is on this basis that, post-*Ellerth* and *Faragher,* I would affirm the district court's grant of summary judgment in favor of Freeman.[50] More to the point, I perceive no other legitimate basis for affirming that court.

I offer one final observation which likely explains the overarching premise of Judge Jones's struggle with this case—her candidly expressed concern that, if the *Ellerth/Far-*

*agher* test applies to cases such as this one, "[v]icarious liability would amount to strict liability even though the plaintiff had neither a severe or pervasive change in her working conditions nor any adverse employment action."[51] I find Judge Jones's fear as unwarranted as it is inaccurate, for at least two reasons. First, to (re)state the obvious, absent "any adverse employment action," i.e., any tangible employment action, an employer is never vicariously liable for a supervisor's conduct unless such conduct is either severe or pervasive, for employers are strictly liable only for *actionable* sexual harassment on the part of their supervisory employees. Thus, Judge Jones forecasts a legally impossible result. The Supreme Court has decreed—as is its prerogative—that when such supervisor harassment produces a tangible employment action, agency principles dictate precisely the result that Judge Jones abhors, i.e., strict liability and no affirmative defenses. But, absent a tangible employment action, the supervisor's sexually opprobrious conduct must be either severe or pervasive to be actionable in vicarious liability. Ergo, the employer can never be vicariously liable in the hypothetical situation that so disturbs Judge Jones: (1) No severe or pervasive sexual misconduct and (2) no tangible employment action. Her chimera evanesces in the cold light of day, logic, and pure legal analysis.

Second, this case demonstrates why, as a practical matter, inappropriate sexual conduct will virtually never rise to the level of actionability when an employer takes the kind of prompt remedial action that Judge Jones applauds (as do we all). Here, Free-

---

**46.** *Harris,* 510 U.S. at 23, 114 S.Ct. 367.

**47.** *See Southard v. Texas Bd. of Crim. Justice,* 114 F.3d 539, 555 (5th Cir.1997) (holding official, who stared at female plaintiff, made suggestive comments to her, and slammed her door, was entitled to qualified immunity because his conduct was not severe or pervasive enough to constitute sexual harassment).

**48.** *See Harris,* 510 U.S. at 19, 21–23, 114 S.Ct. 367; *Farpella–Crosby v. Horizon Health Care,* 97 F.3d 803, 805–06 (5th Cir.1996).

**49.** *See DeAngelis v. El Paso Mun. Police Officers Assoc.,* 51 F.3d 591, 595–96 (5th Cir.1995) (holding ten columns in association newsletter containing derogatory statements about women, only four of which referred to plaintiff, could not alone amount to actionable sexual harassment); *Long v. Eastfield College,* 88 F.3d 300, 309 (5th Cir.1996) (single offensive joke did not support claim for hostile work environment).

**50.** Although Judge Jones purports to assume *arguendo* and therefore not decide whether Indest was subjected to a sexually hostile work environment, she concludes (as do I): "As far as the entire context of Indest's employment with Freeman is concerned, [ ], Arnaudet's misbehavior was neither severe nor pervasive." Jones Op. at 264.

**51.** *Id.* at 266.

man's timely and effective response to Indest's complaints cut Arnaudet's sexual misconduct off at the pass, preventing him from either subjecting Indest to additional sexual comments and gestures or escalating his inappropriate behavior to more egregious forms or levels of misconduct. In other words, Freeman's sexual harassment grievance procedure worked exactly as designed by Freeman and as envisioned by the Equal Employment Opportunity Commission—and as now envisioned by the Supreme Court in tempering strict agency principles—the "stick"—with an · overlay of deterrent policy—the "carrot." Indest's case well illustrates that, when an employer satisfies the first element of the Supreme Court's affirmative defense, it will likely forestall its own vicarious liability for a supervisor's discriminatory conduct by nipping such behavior in the bud. When that happens, neither the employer nor the court need ever reach the question posed by the (b) element of the Court's affirmative defense, i.e., whether the plaintiff unreasonably failed to take advantage of any corrective opportunities, because the employer will have prevented the supervisor's behavior from rising to the severe or pervasive level required to be actionable under Title VII.[52]

### III.

### Conclusion

Since June 26, 1998, when Justice Kennedy filed his majority opinion in *Ellerth*,[53] and Justice Souter filed his majority opinion in *Faragher*,[54] the methodology mandated for all inferior federal courts to follow in disposing of vicarious liability claims against employers, grounded in sexual harassment perpetrated by supervisory employees, has been unmistakable and easily fathomable. For openers, the Court obviously selected and paired *Ellerth* and *Faragher*. One (*Ellerth*) presents a stereotypical example of one supervisor "hitting on" one subordinate employee for sexual favors while actually or impliedly threatening employment retaliation unless (or promising employment benefits if) the subordinate "comes across." The other (*Faragher*) presents an equally stereotypical example of several supervisors' making crude, offensive, insensitive, and boorish comments, and taking discriminatory actions, of a sexual nature, which in combination produce a working environment that cannot or should not be tolerated by subordinate employees.[55]

With these complementary fact patterns as its backdrop, the Court begins its didactic exercise by defining—in some instances, redefining—terms of art for use when addressing such vicarious liability claims: "Supervisor" continues to mean the same thing that it meant under pre-*Ellerth*/*Faragher* jurisprudence; "tangible employment action" is now the universal term of art for any change in the terms or conditions of the subordinate's employment, initiated or imposed by or on behalf of the employer and requiring an official act of the employer, such as hiring, firing, demoting, and so forth;[56] "quid pro quo" is redefined, henceforth to identify that type of vicarious liability supervisor sexual harassment claim in which a tangible employment action is taken and there is a nexus between the· supervisor's sexual misconduct and the tangible employment action experienced by the employee;[57] "hostile work environment"

---

**52.** It is, of course, theoretically possible for a supervisor to engage in sufficiently severe conduct (e.g., raping, "flashing," or forcibly groping or disrobing the subordinate employee) in such a short period of time that, even though (1) the employee reports the conduct immediately, (2) the employer takes swift and decisive remedial action, and (3) no tangible employment action ensues, the employer could still be held vicariously liable under the *Ellerth*/*Faragher* "severe or pervasive" test. Whether or not Judge Jones or I would agree with such a result, we remain bound by the Supreme Court's judgment in the matter.

**53.** Justice Ginsberg concurred in the judgment, and Justices Scalia and Thomas dissented.

**54.** Justices Scalia and Thomas dissented.

**55.** Since the Court's majority opinion in *Oncale*, 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201, any question that the supervisor and the subordinate employee had to be of opposite sexes to be actionable has been eliminated.

**56.** *See supra* note 19.

**57.** *See supra* note 4.

is redefined, henceforth to identify that type of vicarious liability supervisor sexual harassment claim in which the sexually harassed employee has not experienced a tangible employment action—whether or not one had been threatened;[58] "actionable" sexual harassment by a supervisor is conduct that alters the terms or conditions of the subordinate's employment, and clearly violates Title VII, by either (1) resulting in a tangible employment action (thus *explicitly* altering the terms and conditions of employment) or, (2) in the absence of a tangible employment action is so severe or pervasive as to alter implicitly the terms and conditions of the subordinate's employment; "severe or pervasive" continues to describe a supervisor's course of sexual misconduct or the kind of work place such conduct produces, that, as under pre-*Ellerth/Faragher* jurisprudence, rises above the merely offensive and boorish and enters the realm of sexual misconduct, and the work environment created by such conduct, that no employee should be expected to tolerate;[59] and "vicarious liability" continues to have its traditional meaning in the context of master-servant or principal-agent law ("traditional agency principles") which imposes liability on the master or principal for various acts or omissions of its servant or agent, without any requirement of fault on the part of the master or principal, i.e., strict liability, liability without fault, or *respondeat superior.*

With that glossary firmly established, the Court proceeds to confect the road map to be followed by district and appellate courts when addressing any vicarious liability claim against employers for a supervisor's sexual harassment of a subordinate employee. Once the court in question determines that the litigation before it is of that ilk, the road depicted on the Supreme Court's map forks: One branch is to be followed by inferior courts when considering a case that includes allegations of a tangible employment action, now dubbed a "quid pro quo" case; the other branch is to be followed by such courts when considering a case that does not contain allegations of a tangible employment action, now dubbed a "hostile work environment" case.

When the judicial journey proceeds along the "quid pro quo" branch of the forked road and leads to a plaintiff-employee who meets his burden of proving that (1) the defendant is his employer, (2) the harasser is a supervisor, (3) the plaintiff was sexually harassed by the supervisor, and (4) a tangible employment action resulted, the employer is vicariously liable *per se,* according to agency principles as reflected by § 219 of the Restatement, and cannot assert any affirmative defenses.

Similarly, when, because the plaintiff has not alleged a tangible employment action, the court's journey proceeds along the "hostile work environment" branch of the road, and leads to a plaintiff-employee who meets his burden of proving that (1) the defendant is his employer; (2) the harasser is a supervisor, (3) he was sexually harassed by the supervisor, and (4) the supervisor's conduct is actionable, i.e., produces a work environment that is either severe or pervasive, the employer is subject to vicarious liability. But, unlike the employer in cases that follow the quid pro quo branch of the road, the vicariously liable employer in the non-tangible employment action (hostile work environment) case is allowed by the Court, for Title VII policy reasons, to depart from strict agency principles and advance one—but only one—affirmative defense: The two-element, conjunctive defense comprising exercise by the employer of reasonable care to prevent and correct the sexually harassing behavior *and* the unreasonable failure of the plaintiff-employee to take advantage of the employer's preventive or corrective opportunities or to avoid harm otherwise. Only if such an employer is successful in proving both elements of this unique affirmative defense can responsibility for a supervisor's actionable sexual harassment be avoided.

The pellucid teachings of the Court are easy to apply in the instant case: We look

---

**58.** *See id.*

**59.** *Harris,* 510 U.S. at 21, 114 S.Ct. 367 ("Conduct that is not severe or pervasive enough to create an objectively hostile or abusive environ- ment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview.").

first and foremost for a "tangible employment action" against Ms. Indest. Finding none, we know we are to follow the branch in the analytical road reserved for the newly-labeled "hostile work environment" category of supervisor sexual harassment. When we take that path, though, we must remain mindful that (1) Arnaudet's conduct and its results are "actionable" only if they are severe or pervasive; and (2) if we conclude that they are, Freeman is vicariously liable unless it can prove *both* elements of the *Ellerth /Faragher* two-pronged, affirmative defense.

The undisputed facts that bear on the second element of that affirmative defense prove conclusively that, by immediately objecting to, reporting, and pursuing—as far up the chain of command as was necessary—the offending conduct of Arnaudet, Ms. Indest did *not* "unreasonably fail[ ] to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." [60] As such, Freeman cannot advance this (or any other) affirmative defense to escape liability, regardless of the single fact employed by Judge Jones as the sole *ratio decidendi* for her disposition of the case—that Freeman exercised reasonable care to prevent and correct promptly Arnaudet's offensive behavior.

I end, therefore, where I believe that this panel should have ended, with what ought to be the second and deciding question of this case: Having answered in the negative the initial question whether a tangible employment action was taken against Indest, we should here inquire next whether the situation created by Arnaudet's sexual misconduct was sufficiently severe or pervasive to be actionable. The record of this appeal leaves no doubt that this question must be answered in the negative: Arnaudet's remarks and gestures were clearly crude, offensive, and boorish, and his overt and implied (but unfulfilled) threats of an adverse employment action were inappropriate to say the least. But when they are viewed in light of all traditional factors for testing the severity or pervasiveness of such conduct, neither the conduct nor the work environment it produced was actionable.

As the district court decided this case without benefit of the Supreme Court's subsequent tutelage in *Ellerth* and *Faragher,* it could not have considered the case within that framework; it did not have the benefit of the Court's new road map. But we do and we must follow it. Thus, I would affirm the court's j.m.l. that dismissed Indest's vicarious liability claims against Freeman, but would not do so because Freeman had appropriate policies in place and acted promptly and effectively after learning of Arnaudet's behavior. Indeed, Indest's equally prompt and appropriate responses stymies Freeman's entitlement to assert the only affirmative defense potentially available. Rather, I would affirm because the inappropriate conduct of the supervisor, Arnaudet, does not rise to the level of "severe or pervasive," and thus is not actionable for purposes of vicarious liability.

---

60. *Ellerth,* 118 S.Ct. at 2270; *Faragher,* 118 S.Ct. at 2293.