UNITED STATES of America, Plaintiff,

v.

MULLEN & COMPANY, Defendant,

Richard D. Mangone, Intervenor.

No. 91–10682–Y.

United States District Court,
D. Massachusetts.

Oct. 18, 1991.

Steven W. Widerman, Nat. Credit Union Admin., Office of General Counsel, Washington, D.C., for Nat. Credit Union Admin.

Paul G. Levenson, U.S. Attorney's Office, Boston, Mass., for U.S.

David A. Conforti, Lane & Mittendorf, Edison, N.J., for Richard D. Mangone.

A. Van C. Lanckton, Boston, Mass., for James K. Smith.

Edward Thomas Hinchey, Sloane & Walsh, Boston, Mass., for Michael D. O'Neil.

Richard Mark Gelb, Margaret Yvonne Foldes, Gelb & Gelb, Boston, Mass., for Mullen & Co.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This action arises out of the attempt by the National Credit Union Administration ("Administration") to enforce an administrative subpoena against Mullen & Co. ("Mullen"), an accounting firm. The targets of the Administration's investigation have been permitted to intervene to assert an attorney-client privilege in certain of the documents on the ground that two out of the three accountants who worked on the affairs of the target individuals are attorneys who provided "legal financial" advice. Mullen stands ready to comply with the Court's order.

■ It is well settled that there is no accountant-client privilege at common law. *Couch v. United States*, 409 U.S. 322, 335, 93 S.Ct. 611, 619, 34 L.Ed.2d 548 (1973); *United States v. Arthur Young & Co.*, 465 U.S. 805, 817, 104 S.Ct. 1495, 1502, 79 L.Ed.2d 826 (1984). Under limited circumstances, however, communications made to an accountant may still be privileged. *See Summit Ltd. v. Levy*, 111 F.R.D. 40, 41 (S.D.N.Y.1986) ("although no privilege attaches specifically to an accountant/client communication, such matters may be withheld if they meet the traditional requirements of the attorney/client privilege").

■ More specifically, the attorney-client privilege may apply to confidential communications made to an accountant when the client is under the mistaken, but reasonable, belief that the professional from whom legal advice is sought is in fact an attorney. *United States v. Boffa*, 513 F.Supp. 517, 523 (D.Del.1981) ("the rationale behind the privilege equally supports the theory that the privilege should be extended to those who make confidential communications to an individual in the genuine, but mistaken, belief that he is an attorney").

■ Likewise, the privilege extends to communications made to certain agents of an attorney, including an accountant hired to assist the client's attorney so that the attorney can provide legal advice. *United States v. Kovel*, 296 F.2d 918 (2d Cir.1961) (privilege may be properly invoked by an accountant, employee of tax law firm, if communications were made pursuant to his consultative role to the attorney and at the attorney's direction).

What is vital to the privilege is that the communications be made *in confidence* for the purpose of obtaining *legal* advice *from the lawyer*. If what is sought is not legal advice but only accounting service [sic], ... or if the advice sought is the accountant's rather than the lawyer's, no privilege exists. The communication must have been given in confidence for the purpose of obtaining legal advice.

*Kovel*, at 922 (emphasis in original). *See also, United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir.1989) ("information provided to an accountant by a client at the behest of his attorney for the purposes of interpretation and analysis is privileged to the extent that it is imparted in connection with the legal representation").

■ Finally, if the accountant is also an attorney, the oft-cited *Kovel* analysis properly applies the attorney-client privilege to communications pertaining to legal advice sought from the accountant in the accountant's capacity as an attorney. *United States v. Threlkeld*, 241 F.Supp. 324, 326 (W.D.Tenn.1965) (where certified public accountant-attorney held himself out solely as an attorney); *Matter of Grand Jury Subpoena Duces Tecum, etc.*, 697 F.2d 277, 279–80 (10th Cir.1983) (same); *United States v. Shoeberlein*, 335 F.Supp. 1048, 1057 (D.Md.1971) (that attorney who prepared income tax returns is accountant as well as lawyer does not foreclose him from invoking attorney-client privilege on appropriate occasions).[1] The individuals asserting the privilege bear the burden of

---

**1.** At least one court has arguably gone further, focusing on the nature of the service performed rather than the nature of the professional relationship, and suggesting that tax return preparation is sufficiently "legal" in nature, as opposed to "business," to trigger the privilege. *In re Colton*, 201 F.Supp. 13, 16 (S.D.N.Y.1961), *aff'd* 306 F.2d 633 (1962) ("[c]onsidering the complexities of modern tax law, it would seem that an attorney who prepares tax returns for a client is primarily engaged in performing legal services"). The attorney-client privilege, however, is to be construed narrowly. *Matter of Grand Jury Subpoena*, 697 F.2d at 278. *See generally, Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976).

In light of this analysis, the central factual question is whether the relevant work papers and private communications were made pursuant to one or more of the target individuals seeking *legal advice* from a professional he either perceived to be an attorney or an attorney's agent. Accordingly, this Court eschews any holding that tax return data when prepared by an attorney is, by its very nature, immune from discovery under the attorney-client privilege. *See United States v. Davis*, 636 F.2d 1028, 1043 (5th Cir.), *cert. denied*, 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981).

proving its applicability in the present circumstances.

 Unfortunately, the record proffered is utterly inadequate to the purpose. A second-hand affidavit from the present attorney of one of the target individuals with generalized descriptions of "legal financial" services rendered simply will not do. On this record, the Court would be justified in overruling the assertion of privilege out of hand.

Still, a due regard for the proper limits of the privilege and its social utility in our justice system inclines the Court to seek the prompt development of a more adequate record, one upon which a document-by-document ruling can be made. Accordingly, the parties are afforded twenty days from the date of this order to file affidavits and documents from competent individuals addressing the factual issue. Without in any way exhausting the range of factors to be considered, the Court is interested in at least the following:

Recognizing that the nature of the service is not determinative, but rather the nature of the professional relationship, *see* note 1 above, what legal advice were the target individuals seeking? Were they, or any of them, then represented by counsel? What was the relationship of outside counsel to the accounting firm? Which Mullen employee worked on which document? Was the non-lawyer accountant subordinate to the two lawyer-accountants? If so, did they or either of them select the non-lawyer accountant to aid in the provision of legal services?

If the target individuals claim to have relied upon Mullen employees as lawyers for legal advice, how reasonable was that reliance? What facts demonstrate that the lawyer-accountants in any way held themselves out as affording legal advice? Does Mullen or either of these two individuals carry legal malpractice insurance? Are the lawyers, in fact, authorized to practice law in any jurisdiction? Do they practice law on the side? Since it is suggested that the provision of legal services runs counter to the lawyer-accountant's ethical duties as accountants, what approvals were garnered from their superiors at Mullen? Does any-

one at Mullen recognize that its employees were purporting to render legal services? If so, have they been disciplined? What steps has Mullen taken to insure that its clients recognize they are not being afforded legal services?

These and many other questions will no doubt occur to the parties. All are to be addressed in particular detail with respect to particular documents as to which privilege is claimed, by affiants who are competent to testify to the matters averred.

Should such affidavits and documents be filed, the Court will rule promptly upon the claim of privilege. Should no such material be timely filed, the claim of privilege is overruled and Mullen is ordered to produce the withheld documents at the end of the twenty day period.

SO ORDERED.