CITY OF WORCESTER, Plaintiff,

v.

HCA MANAGEMENT COMPANY, INC., Defendant and Third–Party Plaintiff,

v.

BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, Ernst & Young, and Louis W. Sullivan, M.D., Secretary of Health and Human Services, Third–Party Defendants.

Civ. A. No. 90–40012–GN.

United States District Court, D. Massachusetts.

Dec. 27, 1993.

M. Allison Hamm, City of Worcester Law Dept., Gary S. Brackett, Elaine M. Lucas, Brackett & Lucas, Worcester, MA, for City of Worcester.

William A. Horne, Eric L. Yaffe, Goulston & Storrs, Boston, MA, for HCA Management Co., Inc.

Susan L. Carity, Blue Cross/Blue Shield of Massachusetts, Boston, MA, for Blue Cross/ Blue Shield of Massachusetts.

Michael P. Angelini, Louis M. Ciavarra, Vincent F. O'Rourke, Bowditch & Dewey, Worcester, MA, Patricia A. McGovern, Christine M. Guerci, Ernst & Young, New York City, for Ernst & Young.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Pending before this Court is the motion of third-party defendant, Ernst & Young ("E & Y"), for a protective order with respect to certain documents produced by E & Y to defendant and third-party plaintiff, HCA Management Company, Inc. ("HCA"). E & Y maintains that the documents were inadvertently produced, are protected from discovery by the attorney-client privilege and/or the work product doctrine and must, therefore, be returned to E & Y. HCA, joined by plaintiff, the City of Worcester ("the City"), and third-party defendant, Blue Cross and Blue Shield of Massachusetts ("Blue Cross"), argue that the documents are not privileged, or, in the alternative, that any privilege has been waived by the production of the docu-

ments to a party opponent.[1] The documents in question have been reviewed *in camera* by this Court.

## I. Background

This litigation arises from disputed Medicare payments made to Worcester City Hospital ("the Hospital") between 1986 and 1989. The City, owner of the Hospital, entered a management agreement with HCA in 1984, pursuant to which HCA managed the Hospital. The City also contracted with E & Y for outside auditing services, and E & Y audited the Hospital's financial statements for the fiscal years ending June 30, 1986, 1987 and 1988.

The City commenced this action against HCA on January 25, 1990, alleging breach of contract, negligence and violations of the Massachusetts Consumer Protection Act ch. 93A. The gravamen of the City's complaint is that, due to the fault of HCA (among others), the Hospital mistakenly received duplicate Medicare payments for a period between approximately December 1987 and September 1989 which the City is required to remit to the federal government to its substantial detriment. HCA impleaded E & Y and Blue Cross in March 1990, seeking contribution. E & Y withdrew as auditor of the City in May 1990, and the City later asserted breach of contract and negligence claims against E & Y. The claims against E & Y allege, among other things, that its audits of the Hospital were deficient in not discovering the duplicate Medicare payments.

On June 24, 1993, in response to a discovery request by HCA, E & Y produced various documents. In November 1993, E & Y informed HCA that certain of those documents were inadvertently produced and were privileged. Following several conversations between counsel, E & Y requested the return of the allegedly privileged documents. HCA refused. E & Y subsequently filed the subject motion, pursuant to Fed.R.Civ.P. 26(c), seeking an order requiring HCA, among oth-

---

1. Of the three parties opposing E & Y's motion, only HCA has actually seen the documents in question. For this reason, and for the sake of convenience, this Court will refer simply to "HCA" when discussing the arguments in opposition to E & Y's motion.

er things, to return to E & Y all copies of the allegedly privileged documents.

## II. Discussion

### A. *Work Product Doctrine*

■ The work product doctrine, announced in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and codified in Fed.R.Civ.P. 26(b)(3), protects 1) documents or other tangible things, 2) prepared in anticipation of litigation, 3) by or for a party, or by or for a party's representative. *Pasteris v. Robillard,* 121 F.R.D. 18, 20 (D.Mass.1988). The work product doctrine protects the integrity of the adversarial process by creating a zone of privacy and protection for the attorney's preparatory work on a case. *See Hickman,* 329 U.S. at 510–11, 67 S.Ct. at 393–94. The burden is on E & Y to demonstrate that the documents in question are work product. *See Sham v. Hyannis Heritage House Hotel, Inc.,* 118 F.R.D. 24, 25 (D.Mass.1987).

### B. *Attorney–Client Privilege*

■ The attorney-client privilege (which is exercisable by the client, not the attorney) protects communications made between an attorney and a client for the sake of obtaining legal advice. *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). The privilege extends to communications made to a representative of the attorney for the sake of obtaining the attorney's advice. *See U.S. v. Mullen,* 776 F.Supp. 620, 621 (D.Mass.1991). E & Y, as the party asserting the privilege, has the burden of proving that the privilege attaches to the communications at issue. *Colonial Gas Co. v. AETNA Cas. & Sur. Co.,* 144 F.R.D. 600, 604 (D.Mass.1992).

### C. *The Documents*

Although the instant dispute involves several documents produced by E & Y, the parties have focused their time and energy on one particular document which is a detailed review of E & Y's auditing of the Hospital for the fiscal year ended June 30, 1989 (hereinafter "the analytic memorandum"). Because of the singular importance of that document, this Court will first address E & Y's motion with respect to the draft analytic memorandum and then address the motion with respect to the remainder of the documents at issue.

#### 1. *The Analytic Memorandum*

The analytic memorandum is dated November 6, 1989 and its stated subject matter is: "Worcester City Hospital; Litigation Review." It is a lengthy document prepared by E & Y audit and accounting professionals at the direction of, and for, John Matson, Deputy General Counsel of E & Y. A draft of the document was disseminated to Thomas Blake, an E & Y partner who was involved in providing professional services to the Hospital.

■ As the parties have recognized, the critical question is whether the analytic memorandum was prepared in anticipation of litigation. In this respect, the mere fact that E & Y was involved in an incident that would possibly subject it to litigation is not dispositive of the determination of whether the memorandum was prepared in anticipation of litigation. *See, e.g., Scott Papers Co. v. Ceilcote Co. Inc.,* 103 F.R.D. 591, 596 (D.Me. 1984) (primary motivation for creation of document was to report on a business meeting and to prevent business dispute from leading to legal action, not to prepare for litigation). The Court must, to the best of its ability, determine whether the prospect of litigation was the actual and primary motivation of E & Y for preparing the analytic memorandum. In undertaking that task, it is helpful to consider, among other things, the "temporal proximity or the likelihood of litigation." *Id.* at 594.

■ In early October 1989, HCA informed the City that the Hospital had received overpayments from Medicare. The City terminated HCA's management contract on October 11, 1989. The analytic memorandum was, less than one month later, requested by John Matson "[i]n connection with the recent allegations of significant duplicate medicare payments" to the Hospital. (*See* Analytic Memorandum, AY015537). It is alleged that the Hospital received duplicate Medicare

payments in the amount of $17,000,000 (although it is unclear whether that figure was known when the allegations first surfaced). It is reasonable to assume that an accounting firm of E & Y's experience and sophistication would immediately recognize, as soon as the allegations were made, that its audit of the Hospital would be challenged.

HCA nevertheless argues that the analytic memorandum was produced primarily for business purposes. HCA contends that the memorandum is merely a business review of a potentially troublesome audit conducted by E & Y. HCA points to the fact that the memorandum was disseminated to Thomas Blake, an E & Y partner, to support that contention.

In this Court's view, however, it is clear from reviewing the document, the correspondence attached to it and the affidavit of John Matson, that the memorandum was sent to Blake so that he, as the partner involved in the Hospital audit, could review and evaluate for Matson the accuracy of the memorandum. The ultimate destination of the memorandum plainly was the General Counsel's office.

HCA also maintains that, under the rules of professional responsibility for accountants, E & Y was required to withdraw as auditor for the City if it believed it was subject to legal claims by the City. E & Y must not have anticipated litigation in November 1989, HCA argues, because, if it had, it would have then withdrawn as auditor for the City. The syllogism does not hold.

This Court takes no position on whether, under the rules of professional responsibility for accountants, E & Y should have withdrawn as auditor for the City as soon as it anticipated litigation in November 1989. The fact that E & Y may have violated a rule of professional responsibility, while perhaps relevant to the pending question, is not dispositive of the issue of whether the prospect of litigation was E & Y's *actual* motivation for creating the analytic memorandum. Having

carefully reviewed the draft analytic memorandum, *in camera*, and the arguments presented by the parties, this Court concludes that it was created in anticipation of litigation and is, therefore, protected work product.[2]

■ This Court also concludes that production of the analytic memorandum by E & Y was inadvertent and that such inadvertent disclosure does not constitute a waiver of the privilege. In reaching that conclusion, this Court has considered the totality of the circumstances surrounding the inadvertent production, including 1) the reasonableness of E & Y's precautions to prevent inadvertent disclosure, 2) the amount of time it took E & Y to notice its error, 3) the scope of the discovery, 4) the extent of the disclosure, and 5) the overriding interest of fairness and justice. *See Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 104 (S.D.N.Y. 1985).

Furthermore, as a Magistrate Judge in this District recently noted, the appropriate question in considering those factors:

> is not whether it remains essential to continue to recognize the privilege; the question, rather, is whether there is cause not to do so, such as that recognition might work an injustice or impose undue burden on the judicial system.

*Fleet National Bank*, 150 F.R.D. 10, 16 (D.Mass.1993). In this Court's view, recognition of the privilege under these circumstances does not result in an injustice. On the contrary, it promotes the important goals of the work product doctrine and the attorney-client privilege. For the foregoing reasons, E & Y's motion for a protective order with respect to these documents will be allowed.

### 2. The Remaining Documents

Upon carefully reviewing the remaining documents, *in camera*, and considering the arguments presented by the parties, this

---

**2.** Although it is unnecessary for the purpose of this decision, this Court finds that the analytic memorandum is also protected by the attorney-client privilege. The communications were made by E & Y accountants (the client) for the purposes of securing legal advice from John Matson, Deputy General Counsel (the attorney), concerning E & Y's liability with respect to the alleged overpayments to the Hospital. *See United States v. Mullen & Company*, 776 F.Supp. 620, 621 (D.Mass.1991); *Fleet National Bank v. Tonneson & Co.*, 150 F.R.D. 10, 11 (D.Mass. 1993).

Court concludes that they are all protected either as work product or by the attorney-client privilege. Moreover, the above discussion of waiver applies with equal force to those documents and, therefore, E & Y's motion for a protective order with respect to them will also be allowed.

## ORDER

For the foregoing reasons, the motion of third-party defendant, E & Y, for a protective order is ALLOWED. Defendant and third-party plaintiff, HCA, is directed to return to E & Y all copies of the inadvertently disclosed, privileged documents on or before January 3, 1994.

So Ordered.