UNITED STATES of America, Petitioner,

v.

R. David RANDALL, Respondent.

No. 98–10388–NG.

United States District Court, D. Massachusetts.

May 21, 1999.

---

### MEMORANDUM AND ORDER

GERTNER, District Judge.

The United States of America filed a Petition to Enforce an Internal Revenue Service ("IRS") Summons of the respondent, R. David Randall ("Randall"), pursuant to 26 U.S.C. §§ 7402(b) and 7404(a) of the Internal Revenue Code. The summons sought the testimony of Randall concerning all conversations he had with two taxpayers, Sung Ku Cho and Grace Wonja Kim (hereinafter jointly "the taxpayers"), and the production of documents in his custody relative to financial transactions of the taxpayers. The request was limited to the time interval from October 30, 1996, until Randall was retained by counsel.[1] Upon the request of one of the taxpayers, Grace Wonja Kim ("Kim"), Randall refused to provide the summoned information or attend an interview with the IRS agent, stating that all conversations, even those during this time period, were protected by the

---

1. Randall produced a letter, dated December 12, 1996, from Hill & Barlow confirming their retainment agreement with Randall with respect to the tax affairs of the taxpayers. Although the government petition estimates the retainment date as one month later on January 7, 1997, it provides no evidence to support this date, or refute the earlier one. Therefore, for the purposes of this summons, I find the relevant time interval is from October 30, 1996, to December 12, 1996.

attorney-client privilege, and that the documents were protected as attorney work product.

Based on the facts presented, I find that the materials sought by the IRS summons, up until December 12, 1996, are not protected by these privileges; I **GRANT** the United State's Petition to Enforce the IRS Summons.

## I. *FACTS*

The IRS is conducting a criminal investigation of the taxpayers, with respect to their 1992, 1993, 1994, and 1995, federal income tax returns. In support of that investigation, the IRS summonsed Randall, an accountant, with whom the taxpayers consulted, and to whom they transferred their tax records from their return preparer, Angelo Larraga ("Larraga"). The summons sought to have Randall testify about all conversations with the taxpayers during the relevant time period, and to produce any and all documents in his custody or control relative to the financial transactions of the taxpayers. The summons was issued first on August 5, 1997, and then re-issued on September 11, 1997. It was limited to the time interval from October 30, 1996 until January 7, 1997, when the government believed Randall was first retained by counsel. *See supra* note 1.

At the request of Kim, Randall refused to respond to the summons, stating that all of the conversations are protected by the attorney-client privilege, and that the documents are protected as attorney work-product. The basis for this privilege, Randall argues, is that the taxpayers' attorney, Larraga, specifically retained him to meet with the taxpayers regarding their tax audit investigation.

The United States issued an Order to Show Cause and a hearing was held before this Court on December 8, 1998. At the hearing, Kim moved to intervene—which the Court allowed. Through Randall's testimony and the cross examination of Larraga, Kim attempted to show that Randall was an agent retained by her lawyer Larraga. Thus, all communications, she claims, were made in

confidence for the purposes of obtaining legal advice relative to the IRS audit, and not for the purpose of obtaining accountant services. Even though Larraga testified that he did not retain Randall for legal purposes, and that his own role was limited to preparing the tax returns not providing legal advice regarding this audit,[2] Randall and Kim argue that a privilege was formed based on what they *believed* was the relationship. Finally, although the motion to intervene states that Kim wanted to assert *her* privilege and protect the confidentiality of her communications with Randall, Kim did not testify at the hearing.

## II. *Legal Standard*

■ For enforcement of a IRS summons, the United States must present the following *prima facie* case: (1) that the summon was issued for a legitimate purpose, (2) that the summoned date may be relevant to the that purpose, (3) that the data are not already in the government's possession, and (4) that the administrative steps required by the Internal Revenue Code for issuance and service have been followed. *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). The government has met it burden as set forth in the declaration of Special Agent Vant. Furthermore, neither Kim nor Randall have challenged the validity of the summons other than to assert claims of attorney client and work product privilege. Accordingly, I find that the government has established the basis for an enforceable summons.

## III. *Attorney–Client Privilege*

The intervener, Kim, argues that the summoned communications are protected by the attorney-client privilege. She does not assert the privilege herself, however. Instead, it is raised through the testimony of her accountant, Randall.

■ The attorney-client privilege is exercisable by the client, not the attorney. It is her burden to establish its existence, and the confidential nature of the challenged communication. *See United States v. Wil-*

---

**2.** It was suggested that Larraga had acted as    legal counsel to the taxpayers in the past.

*son,* 798 F.2d 509, 512 (1st Cir.1986). The attorney-client privilege only attaches to communications made by the client in confidence to an attorney, for the purposes of securing legal advice or assistance. *See In re Grand Jury Investigation,* 842 F.2d 1223, 1224 (11th Cir.1987) (cites omitted); *City of Worcester v. HCA Management Co. Inc. v. Blue Cross and Blue Shield of Massachusetts,* 839 F.Supp. 86, 88 (D.Mass.1993); *U.S. v. Mullen,* 776 F.Supp. 620, 621 (D.Mass. 1991).

In this case, it is Kim's conversations with Randall, someone who is not her attorney, which were summoned. Kim maintains that these conversations with the accountant fit within the privilege because Randall was acting as an agent for attorney Larraga.

■■■ Although there is no traditional "accountant-client privilege," *see Couch v. United States,* 409 U.S. 322, 335, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); *United States v. Arthur Young & Co.,* 465 U.S. 805, 817, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984), under limited circumstances, communications made to an accountant may still be privileged. *See Summit Ltd. v. Levy,* 111 F.R.D. 40, 41 (S.D.N.Y.1986) ("although no privilege attaches specifically to an accountant/client communication, such matters may be withheld if they meet the traditional requirements of the attorney/client privilege").[3] The privilege extends to communications made by the client to certain agents of the attorney, including an accountant, hired to assist the attorney in providing legal advice. *United States v. Kovel,* 296 F.2d 918 (2nd Cir.1961) (privilege may be properly invoked by an accountant, employee of tax law firm, if communications were made pursuant to his consultant role to the attorney and at the attorney's direction). What is vital to the privilege is that the communication at issue be made in confidence for the purpose of obtaining *legal* advice from the lawyer.

*United States v. Mullen & Co.,* 776 F.Supp. 620, 621 (D.Mass.1991). As courts have held that tax returns preparation alone does not constitute "legal advice" within the scope of the privilege, *see In re Grand Jury Investigation,* 842 F.2d at 1224, if this is all that is sought from the lawyer or agent it is not protected.

Kim must establish that Randall was acting as an agent for her attorney, and that the confidential conversations at issue actually assisted the lawyer with his "legal advice," as opposed to tax preparation or accounting assistance advice. I find that Kim has failed to establish either element.

■■■ A significant problem with Kim's argument is that she does not assert the privilege herself, but rather depends on the assertions of a third party; this is generally not acceptable. *See United States v. Fortna,* 796 F.2d 724, 732–33 (5th Cir.), *cert. denied,* 479 U.S. 950, 107 S.Ct. 437, 93 L.Ed.2d 386 (1986). Furthermore, even if Randall can assert the privilege for Kim, he has not established that he was acting as an agent for Larraga, or that if he was, that the agent relationship concerned the provision of legal advice.

Attorney Larraga testified that he acted as Kim's tax preparer in this case, nothing more. Although he may have provided legal advice in the past, his role for this transaction was limited. The communications provided to him for the purpose of preparing returns, are not covered by the attorney-client privilege. *See United States v. Gurtner,* 474 F.2d 297, 298–99 (9th Cir.1973).[4]

In addition, even if there was some confusion on Kim's part that Larraga was providing legal advice, he testified that he did not retain Randall as an agent, but rather just referred the taxpayers to someone with more experience in these audit matters than he had.

**3.** While there is new law, 26 U.S.C. § 7525, which creates some common law privilege protections for communications between "federally authorized tax practitioners" and the taxpayer, with respect to tax advice, this only applies, if at all, to those communications made on or after the date of the enactment of the act—July 22, 1998. As such, this exception does not apply to conversations like these, which occurred before that date.

**4.** Larraga did submit a Power of Attorney form on the taxpayer's behalf, but only for the limited purpose of correcting "typographical errors" on two joint returns.

Thus, even if Kim's attorney-client privilege can somehow be asserted by the third party, she has not established the requisite elements. Most importantly, she does not show that she had a confidential *legal* relationship with attorney Larraga for the purposes of this audit, which could be extended to Randall. Nor am I convinced, despite Kim and Randall's belief, that Randall was retained by Larraga for assistance in providing legal advice.[5]

## IV.  *ATTORNEY WORK PRODUCT*

 Additionally, Kim argues that the summonsed documentation is protected as attorney work product. Besides the fact that Larraga testified that he was not acting as the taxpayer's counsel, and that he had not retained Randall, the protection of the work product doctrine is limited to work in anticipation of litigation. The work product doctrine protects "the files and the mental impression of an attorney ... reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways" prepared in anticipation of litigation. *Hickman v. Taylor*, 329 U.S. 495, 510–11, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The purpose of the doctrine "is to establish a zone of privacy for strategic litigation planning and to prevent one party from piggybacking on the adversary's preparation." *United States v. Adlman*, 68 F.3d 1495 (2d Cir.1995) (citing *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975)).

During the relevant time period, the taxpayers were under civil audit by the IRS, the case had not yet been referred for criminal investigation. As such, the documents transferred by Larraga, as the taxpayer's preparer, to Randall, merely appear to relate to Larraga's preparation of these returns, nothing more. Indeed, Larraga's requested appearance before the IRS was limited to correcting any typographic errors on the returns. Thus, nothing in the record suggests that any of the documents prepared by Larraga and transferred to Randall were prepared in anticipation of litigation. Nor is there any evidence to suggest that any documents prepared by Randall directly from October 29, 1996, to December 12, 1996, were prepared in anticipation of litigation. Accordingly, I also find that the summoned information is not protected as attorney work product.

For these reasons, I **ORDER** the enforcement of the Summons for information available prior to December 12, 1996.

**SO ORDERED.**

---

5.  Randall does submit a letter documenting that he was retained by the taxpayer's legal counsel at Hill & Barlow on December 12, 1996, but not before.