**UNITED STATES of America,**
**Petitioner,**

v.

**KPMG LLP, Respondent.**

**No. 02–0295 (TFH).**

United States District Court,
District of Columbia.

Dec. 20, 2002.

Stuart David Gibson, U.S. Attorney's Office, Washington, DC, for petitioner.

Michael F. Armstrong, Stephen D. Gardner, Kronish, Lieb, Weiner & Hellman, L.L.P., New York City, for respondent.

### *MEMORANDUM OPINION*

THOMAS F. HOGAN, Chief Judge.

Pending before the Court is the United States of America's Petition to Enforce Internal Revenue Service Summonses. In response to that petition, Respondent KPMG LLP ("KPMG") has filed a detailed privilege log. For the reasons set forth below, the Court is referring that privilege log to a Special Master in order to conduct an examination of the withheld documents and evaluate the asserted privileges.

## I. BACKGROUND / PROCEDURAL HISTORY [1]

### Government's July 9, 2002 Petition to Enforce IRS Summonses

As part of an Internal Revenue Service ("IRS") examination of KPMG's promotion of and participation in transactions that the IRS contends are tax shelters, the IRS served a total of twenty-five administrative summonses on KPMG seeking information and materials relevant to the investigation. On January 28, 2002, the IRS issued a summons requesting information relating to two types of transactions, known as the Foreign Leveraged Investment Program ("FLIP") and the Offshore Portfolio Investment Strategy ("OPIS"). This summons is referred to as the "FLIP/OPIS Summons." *See* Petition to Enforce Internal Revenue Service Summons ("Pet. to Enf.") at 2–3. On March 19, 2002, the IRS issued six additional summonses to KPMG. These summonses are also referred to by the transactions to which they are directed, as the "BLIPS/TRACT/IDV Summons," the "401(k) ACCEL Summons," the " § 6111(c) Summons," the " § 6111(d) Summons," the "Foreign Transactions Summons," and the "MIDCO Summons." *Id.* at 4–6. On May 3, 2002, the IRS issued two more summonses to KPMG, the "Tax Treaty Summons" and the "FOCUS Summons." *Id.* at 6–7.

The IRS contends that although KPMG had produced eighty-four boxes of records [as of April 22, 2002] in response to the FLIP/OPIS Summons and had produced individuals who provided sworn testimony in response to this summons, KPMG failed to fully comply with the summons. *See* Pet. to Enf. at 2–4. The IRS also claims that despite granting KPMG additional time to comply with the summonses issued on March 19 and May 3, KPMG failed to produce all responsive materials for the BLIPS/TRACT/IDV Summons, the 401(k) ACCEL Summons, the § 6111(d) Summons, the Foreign Transaction Summons, the MIDCO Summons, and the Foreign Transaction Summons and has failed to respond at all to the § 6111(c) Summons and the Tax Treaty Summons. *Id.* at 7–9. Therefore, on July 9, 2002, the Government filed the Petition to Enforce Internal Revenue Summonses to enforce these nine administrative summonses issued to KPMG as part of the IRS examination. On July 11, 2002, this Court signed a "Show Cause Order" in response to the Government's Petition.

### KPMG's Opposition to Petition

KPMG responded on September 6, 2002 with its Opposition to Petition ("Opp.").[2] KPMG contends that the twenty-five IRS summonses served over a five month period are "extremely broad, incredibly burdensome, and, in many respects, unenforceable." Opp. at 1. For example, the FLIP/OPIS Summons alone "demanded 50 categories of documents from every KPMG office in the nation (there are approximately 100) ... [and] required KPMG to provide persons to testify about 37 different topics." *Id.* at 5. Despite this burden, KPMG claims that it has worked diligently to respond to the IRS summonses. *Id.* at 5–10. As of the date that the IRS filed the Petition to Enforce, KPMG had "continued its substantial efforts to comply in good faith" with the IRS re-

---

1.  While much of this Background / Procedural History was presented in Magistrate Judge Kay's Memorandum Opinion of September 30, 2002, it is here presented for the sake of context and continuity.

2.  KPMG has also filed an "Answer to Petition to Enforce Internal Revenue Summonses." This Answer spells out in detail KPMG's claimed affirmative defenses and objections regarding the summonses.

quests, producing multiple witnesses, a total of 229 boxes of documents, and providing the IRS with a careful index of each box, even though this was not legally required. *Id.* at 8–10. KPMG asserts that it has continued to respond to the summonses even after the filing of this Petition to Enforce, producing an additional 183 boxes of documents. *Id.* at 11.

### KPMG's Privilege Log and Motion for Protective Order

KPMG withheld from the IRS certain documents that are responsive to the various summonses on grounds that these documents are privileged. *Id.* KPMG provided the IRS with a privilege log of the documents withheld in response to the FLIP/OPIS summons ("FLIP/OPIS privilege log") and supplemented this log as KPMG has continued to produce materials responsive to the summons. *Id.*

The FLIP/OPIS privilege log provides a document-by-document description of the documents withheld from production, "setting forth the document number assigned to each privileged document, the date of the document, the names of the author(s) and recipient(s), a brief description of the contents of the documents, and the privileges applicable to each document." Reply in Opp. to Protective Order at 4–5; *see also* Petition to Enforce at Ex. 3 (the FLIP/OPIS privilege log). As of September 23, 2002, this log includes 1,293 entries. *Id.* However, despite the level of detail included in the privilege log, the IRS asserts that these withheld documents "are not in fact privileged." Petition to Enforce at 3.

KPMG filed a Motion for a Protective Order to avoid the additional burden of preparing a document-by-document privilege log of the materials responsive to the summonses that were withheld on privilege grounds. KPMG states that a document-by-document privilege log for trans-

actions other than FLIP and OPIS would contain at least 8,500 entries, and requests this Court to permit it to prepare a categorical privilege log describing by category the documents withheld on privilege grounds. *See* Motion for Protective Order at 2–4. The Government claimed that it needed a comprehensive, document-by-document privilege log in order to assess the validity of KPMG's claims of privilege. Opp. to Protective Order at 2–3.

### Magistrate Judge Kay's Resolution of the Protective Order

On September 11, 2002, this Court referred KPMG's Motion for a Protective Order to Magistrate Judge Kay for resolution. At the motions hearing in front of Magistrate Judge Kay, counsel for the United States argued that KPMG has failed to demonstrate a valid claim of privilege in the FLIP/OPIS privilege log, which provides a document-by-document description, and contended that a category-by-category privilege log would be even less helpful in assisting the Court and the Government in assessing KPMG's various claims of privilege.

However, KPMG argued that a document-by-document privilege log is not necessary, particularly in light of the Government's blanket negative response to KPMG's claims of privilege. Reply in Opp. to Protective Order at 2. KPMG argued that the additional details included in the FLIP/OPIS privilege log (e.g., names of KPMG personnel, names of client representatives, and dates of correspondence) would not assist the court in making the privilege determination.

Magistrate Judge Kay issued a Memorandum Opinion and Order on September 30, 2002 in which he denied KPMG's motion for the following reason:

> KPMG persuasively argues that the burden of preparing a document-by-docu-

ment privilege log for the materials withheld would be great. *See* Memorandum at 2 (explaining log would contain at least 8,500 entries). KPMG requests permission to prepare a categorical privilege log instead. This Court acknowledges both the burden of this task and the Court's discretion to permit KPMG to prepare a less burdensome, category-by-category privilege log. *See, e.g., United States v. Gericare Medical Supply Inc.,* No. CIV.A.99–0366–CB–L, 2000 WL 33156442, at *3–4 (S.D.Ala. Dec.11, 2000) (upholding use of privilege log prepared by category). *However, the difficulty, as the Government points out, is in assessing KPMG's claims of privilege which are not apparent to this Court even from the more detailed privilege log prepared in response to the FLIP/OPIS summons. The essential function of a privilege log is to permit the opposing party, and ultimately the court, to evaluate a claim of privilege. Allowing KPMG to prepare an even less detailed, category-by-category privilege log would not further this determination.*

AK Mem. Op. of 9/30/02 at 6–7 (emphasis added).

Magistrate Judge Kay concluded

that the categorical privilege log suggested by KPMG would *not* provide the trial court with sufficiently detailed information to make a determination on the validity of the privileges asserted. This Court finds that Chief Judge Hogan will be better able to evaluate the asserted privilege claims after reviewing *in camera* the details contained in the FLIP/OPIS privilege log accompanied by a random sample of the documents falling within each category of the privi-

leges KPMG has asserted. This will assist Chief Judge Hogan in determining whether the FLIP/OPIS privilege log provides adequate detail to make a ruling on the validity of the claimed privileges, by affording the Court an opportunity to compare the sufficiency of the document description contained in the privilege log with the actual documents, and ultimately determining the validity of KPMG's assertion of privilege.

Accordingly, KPMG's Motion for a Protective Order is DENIED. In addition, the Court orders that KPMG produce the following numbered documents listed in the FLIP/OPIS privilege log to Chief Judge Hogan for an *in camera* review. These documents shall be submitted to the Chief Judge's chambers by close of business on Tuesday, October 1, 2002. Document numbers: 22–28, 42–51, 158–161, 435–447, 537–547, 549, 815–825, 835–870, 976–987, 1019–1034, 1040–1051, 1133–1148.

*Id.* at 7–8 (emphasis added).

This Court received the above numbered documents on October 1, 2002.

## II. LEGAL STANDARD

KPMG has asserted the following privileges: (1) 26 U.S.C. § 7525 Confidentiality Privilege; (2) Attorney–Client Privilege; (3) Attorney Work Product Privilege; and (4) "It's Own Privilege." The Court here briefly reviews the legal standard for each of these privileges.

### 26 U.S.C. § 7525 Confidentiality Privilege [3]

26 U.S.C. § 7525 was enacted on July 22, 1998 and provides a limited confidentiality privilege for communications between a taxpayer and a tax practitioner.

---

**3.** Section 7525 is entitled "Confidentiality Privileges Relating to Taxpayer Communications," and reads in its entirety as follows:

(a) Uniform application to taxpayer communications with federally authorized practitioners.

There are few reported federal cases that address 26 U.S.C. § 7525 in detail.[4] However, *United States v. Frederick*, 182 F.3d 496 (7th Cir.1999), *cert. denied*, 528 U.S. 1154, 120 S.Ct. 1157, 145 L.Ed.2d 1070 (2000), sheds some light on this statute. *Frederick* notes that this "statute protects communications between a taxpayer and a federally authorized tax practitioner 'to the extent the communication would be considered a privileged communication if it were between a taxpayer and an attorney.'" *Id.* at 502 (quoting 26 U.S.C. § 7525(a)(1)). Following as it must the text of § 7525, this Court will address any claims of § 7525 privilege in the same manner as it would for the attorney-client privilege.

■ The new statute "does not protect work product," and nothing in the statute "suggests that these nonlawyer practition-

> (1) General rule. With respect to tax advice, the same common law protections of confidentiality which apply to a communication between a taxpayer and an attorney shall also apply to a communication between a taxpayer and any federally authorized tax practitioner to the extent the communication would be considered a privileged communication if it were between a taxpayer and an attorney.
> (2) Limitations. Paragraph (1) may only be asserted in—
> (A) any noncriminal tax matter before the Internal Revenue Service; and
> (B) any noncriminal tax proceeding in Federal court brought by or against the United States.
> (3) Definitions. For purposes of this subsection—
> (A) Federally authorized tax practitioner. The term "federally authorized tax practitioner" means any individual who is authorized under Federal law to practice before the Internal Revenue Service if such practice is subject to Federal regulation under section 330 of title 31, United States Code.
> (B) Tax advice. The term "tax advice" means advice given by an individual with respect to a matter which is within the scope of the individual's authority to practice described in subparagraph (A).
> (b) Section not to apply to communications regarding corporate tax shelters. The privi-

ers are entitled to privilege *when they are doing other than lawyers' work ....*" *Id.* (emphasis added). Accordingly, through application of the plain meaning of the statute and the persuasive guidance of the *Frederick* court, this Court finds that the privilege does not protect communications between a tax practitioner and a client simply for the preparation of a tax return. *See also, e.g., United States v. Lawless*, 709 F.2d 485, 488 (7th Cir.1983) (finding that "information transmitted for the purpose of preparation of a tax return, though transmitted to an attorney, is not privilege information").

## Attorney–Client Privilege

The D.C. Circuit Court of Appeals has set forth the following concise summary of the attorney-client privilege:

> lege under subsection (a) shall not apply to any written communication between a federally authorized tax practitioner and a director, shareholder, officer, or employee, agent, or representative of a corporation in connection with the promotion of the direct or indirect participation of such corporation in any tax shelter (as defined in section 6662(d)(2)(C)(iii)).
> 26 U.S.C. § 7525 (West Supp.2001).
> 26 U.S.C. § 6662(d)(2)(C)(iii) defines "tax shelter" and reads as follows: For purposes of this subparagraph, the term "tax shelter" means—
> (I) a partnership or other entity,
> (II) any investment plan or arrangement, or
> (III) any other plan or arrangement,
> if a significant purpose of such partnership, entity, plan, or arrangement is the avoidance or evasion of Federal income tax.
> 26 U.S.C. §§ 6662(d)(2)(C)(iii) (West Supp. 2001).

4. The majority of the cases that even mention 26 U.S.C. § 7525 do so merely in passing. *See, e.g., Cavallaro v. United States*, 284 F.3d 236, 246 n. 5 (1st Cir.2002) (mentioning the § 7525 privilege only in the context that it applies to communications occurring after July 22, 1998); *United States v. Randall*, 194 F.R.D. 369, 372 n. 3 (D.Mass.1999) (same).

The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Sealed Case*, 737 F.2d 94, 98–99 (D.C.Cir.1984) (citation omitted).

Further, "[c]ommunications from attorney to client are shielded if they rest on confidential information obtained from the client," and "when an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged." *Id.* at 99.

■ Tangentially related to the attorney-client privilege is the rule that a lawyer is barred from practicing law as a member or employee of an accounting firm. Typical of state regulation is the prohibition on accounting firms either practicing law or holding themselves out as law firms. *See, e.g.,* D.C. Bar Rule 5.4(b). However,

[c]ommunications made by and to in-house lawyers in connection with representatives of the corporation seeking and obtaining legal advice may be protected by the attorney-client privilege just as much as communications with outside counsel. *By contrast, communications made by and to the same in-house lawyer with respect to business matters, management decisions or business advice are not protected by the privilege.* When a lawyer acts merely to implement a business transaction or provides accounting services, the lawyer is like any other agent of the corporation whose communications are not privileged. A corporation can protect material as privileged only upon a "clear showing" that the lawyer acted "in a professional legal capacity." Because an in-house lawyer often has other functions in addition to providing legal advice, the lawyer's role on a particular occasion will not be self-evident as it usually is in the case of outside counsel. A court must examine the circumstances to determine whether the lawyer was acting as a lawyer rather than as business advisor or management decision-maker. One important indicator of whether a lawyer is involved in giving legal advice or in some other activity is his or her place on the corporation's organizational chart. There is a presumption that a lawyer in the legal department or working for the general counsel is most often giving legal advice, while the opposite presumption applies to a lawyer . . . who works for the Financial Group or some other seemingly management or business side of the house. A lawyer's place on the organizational chart is not always dispositive, and the relevant presumption therefore may be rebutted by the party asserting the privilege.

*Boca Investerings Partnership v. United States,* 31 F.Supp.2d 9, 11–12 (D.D.C.1998) (citations omitted) (emphasis added).

### Attorney Work–Product Doctrine

The Supreme Court has "recognized a qualified privilege for certain materials prepared by an attorney 'acting for his client *in anticipation of litigation.*'" *United States v. Nobles,* 422 U.S. 225, 237–

38, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (emphasis added). "[T]he burden of showing that the materials were prepared in anticipation of litigation is on the party asserting the privilege," and "[t]his burden entails a showing that the documents were prepared for the purpose of assisting an attorney in preparing for litigation, and not for some other reason." *Alexander v. Federal Bureau of Investigation,* 192 F.R.D. 42, 46 (D.D.C.2000). "For a document to meet this standard, 'the lawyer must at least have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable.'" *In re Sealed Case,* 146 F.3d 881, 884 (D.C.Cir.1998).

### KPMG's "Own Privilege"

KPMG also asserts its "own privilege" with regard to 185 documents.[5] KPMG asserts that the documents withheld under this asserted privilege "generally are correspondence with or work product of KPMG's attorneys or tax practitioners,

---

**5.** The list of these 185 documents was contained in an Appendix to KPMG's proffered October 3, 2002 Sur–Reply. Because the Court found "that KPMG had not established good cause to file another memorandum one day before the October 4, 2002 hearing," the Court denied KPMG's Motion to File a Sur–Reply Memorandum. TFH Order of 10/03/02. However, as the Court finds that KPMG did indeed discuss "its own privilege" in its properly filed September 6, 2002 Opposition to Petition, the Court will consider that list in its overall review of KPMG's asserted privileges as discussed in this Memorandum Opinion.

**6.** In choosing a representative sample from the 150 documents which Magistrate Judge Kay selected for possible *in camera* review, this Court randomly chose 30 documents, or 20 percent of the overall larger sample. These 30 were selected based merely on a desire to review a sample of documents falling under various combinations of claims of privilege. Specifically,
— Documents 22, 44–45, 50, 159, and 823 were chosen because of claimed § 7525 privilege;

memoranda of meetings involving attorneys where legal advice was given or sought, and work product of individuals delegated by attorneys to prepare factual or legal analyses for the purposes of giving legal advice to KPMG." Opp. at 17. This privilege is related to the attorney-client privilege, and in some instances the attorney work-product doctrine. The Court will therefore follow the tenets discussed above regarding those two privileges when reviewing any of the 185 documents in which KPMG's "own privilege" is asserted.

### III. FINDINGS OF *IN CAMERA* REVIEW

As noted above, the Court received document numbers 22–28, 42–51, 158–161, 435–447, 537–547, 549, 815–825, 835–870, 976–987, 1019–1034, 1040–1051, 1133–1148 on October 1, 2002. The Court has since reviewed its own random "sample of that sample" to determine the veracity of KPMG's privilege log.[6]

— Documents 442, 539–40, 822, 839, and 867 were chosen because of claimed § 7525 privilege, attorney-client privilege, and attorney work product privilege;

— Documents 1020–21, 1024–25, 1028, and 1145–46 were chosen because of claimed attorney-client privilege;

— Documents 1142 and 1148 were chosen because of claimed attorney work product privilege;

— Document 1136 was chosen because of claimed attorney-client privilege and attorney work product privilege; and

— Documents 860–62, 870, 1140–41, and 1143–44 were chosen because of KPMG's asserted "own privilege" (i.e., related to the attorney-client privilege, and in some instances the attorney work-product doctrine).

In conducting its review of documents in which the attorney-client privilege and/or its statutory equivalent, 26 U.S.C. § 7525, were claimed, the Court was without any information to determine whether either of the privileges were claimed in any document for the purpose of committing a crime or tort, or

As explained in detail below, the Court is not confident that KPMG's privilege log is supportable.

### Documents re: 26 U.S.C. § 7525 Confidentiality Privilege

KPMG has asserted this privilege both as its own privilege (further discussed *infra*) and on behalf of its clients. Opp. at 16. The Court here only discusses its review of documents in which the privilege was claimed on behalf of KPMG's clients.

*Document 22.*

The Detailed Privilege Log states that Document 22 is a confidential letter from KPMG to its client[7] regarding and containing portions of the KPMG confidential opinion concerning tax advice related to the transaction. As a preliminary matter, Document 22 notes that the client is "an individual," but the Court cannot definitively know from either the privilege log or Document 22 whether the client is affiliated with "a corporation in connection with the promotion of the direct or indirect participation of such corporation in any tax shelter" as 26 U.S.C. § 7525 specifically exempts from privilege protection.

However, of far greater concern to the Court is the fact that there is no indication that Document 22 was written for a purpose other than preparation of a tax return.[8] To begin, the privilege log itself denotes Document 22 as "concerning tax advice." But the true indicium to the Court is found in the first line of Document 22 itself: "You have requested our opinion regarding the U.S. *federal income tax consequences* of certain investment portfolio transactions that have been con-

cluded by you . . . ." Doc. 22 at 1 (emphasis added). A further salient statement is

> "we are of the opinion that under current U.S. federal income tax law there is a greater than 50 percent likelihood (i.e., it is "more likely than not") that the following positions will be upheld if challenged by the Internal Revenue Service . . . Investor will not be subject to U.S. taxation with respect to the amount treated as a dividend . . . Payments made by Investor to Limited Partnership under the swap contract will not be subject to U.S. withholding tax."

Doc. 22 at 8–9.

Based on the plain meaning of those words and lack of any indication or evidence by KPMG to the contrary, the Court can arrive at no other logical conclusion than that Document 22 was prepared in conjunction with preparation of a tax return. Indeed, the Court has not been presented a possible scenario in this case where the IRS would challenge a position that was *not* brought to the attention of the IRS by a means *other than a tax return.* Accordingly, without further information, the Court cannot confidently state that the 26 U.S.C. § 7525 Confidentiality Privilege extends to this document.

*Document 44.*

The Detailed Privilege Log states that Document 44 is a confidential letter from KPMG to its clients, a company and the Managing Member of that company regarding and containing portions of a KPMG confidential opinion concerning tax advice regarding the transaction, executed

---

whether the privilege has been waived by the client. Accordingly, the Court makes no ruling in this opinion on that issue and no inferences are to be drawn therein.

**7.** In the discussion that follows, the Court will avoid the use of any proper names of individ-

uals or KPMG clients in order to preserve their confidentiality at this time.

**8.** As previously mentioned, this privilege does not protect communications between a tax practitioner and a client simply for the preparation of a tax return.

by, *inter alia*, the Managing Member of the company.

The Court cannot definitively determine from either the privilege log or Document 44 that its Managing Member was not affiliated with "a corporation in connection with the promotion of the direct or indirect participation of such corporation in any tax shelter" as 26 U.S.C. § 7525 specifically exempts from privilege protection. Accordingly, on that basis alone, the Court cannot confidently state that the § 7525 Confidentiality Privilege extends to this document.

As was found in reviewing Document 22, there is no indication that Document 44 was written for a purpose other than preparation of a tax return. The privilege log itself denotes Document 44 as "concerning tax advice." Additionally, the first line of Document 44 states: "You have requested our opinion regarding the U.S. *federal income tax consequences* of certain investment portfolio transactions that have been concluded by [the company]." Doc. 44 at 1 (emphasis added). Further,

> "we are of the opinion that under current U.S. federal income tax law there is a greater than 50 percent likelihood (i.e., it is "more likely than not") that the following positions will be upheld if challenged by the Internal Revenue Service ... Investor will not be subject to U.S. taxation with respect to the amount treated as a dividend ... Payments made by Investor to Limited Partnership under the swap contract will not be subject to U.S. withholding tax."

Doc. 44 at 9.

Based on the plain meaning of those words and lack of any indication or evidence by KPMG to the contrary, the Court can arrive at no other logical conclusion than that Document 44 was prepared in conjunction with preparation of a tax return. As was found with Document 22,

the Court has not been presented with a possible scenario where the IRS would challenge a position that was *not* brought to the attention of the IRS by a means *other than a tax return*. In sum, the Court cannot extend the 26 U.S.C. § 7525 Confidentiality Privilege to this document.

*Document 45.*

Document 45 is very similar in both relevant parties and relevant content to Document 44, *see, e.g.,* Doc. 45 at 1, 105, and the Court's analysis there applies to Document 45.

*Document 50.*

The Detailed Privilege Log states that Document 50 is a confidential memorandum from a KPMG employee to another person [presumably another KPMG employee] memorializing a conversation with an individual and his/her attorney about tax advice regarding the transaction. Document 50 specifically discusses possible legislation that would "eliminate taxpayers ability to continue to implement" [the OPIS "strategy"], and any resultant "potential loss[es the individual] may incur." Presented with no further information, the Court is hard pressed to see how Document 50 was *not* prepared in conjunction with preparation of a tax return. Therefore, the Court cannot state with any confidence that the § 7525 Confidentiality Privilege extends to this document.

*Document 159.*

Document 159 is very similar in relevant content to Document 22, *see, e.g.,* Doc. 159 at 1, 94, and the Court's analysis there applies to Document 159.

*Document 823.*

Document 823 is very similar in relevant content to Document 22, *see, e.g.,* Doc. 823 at 1, 8–9, and the Court's analysis there applies to Document 823.

**Documents re: 26 U.S.C. § 7525 Confidentiality Privilege, Attorney–Client Privilege, and Attorney Work Product Privilege**

*Document 442.*

The Detailed Privilege Log states that Document 442 is a legal opinion from a law firm to an employee of a company, concerning tax advice regarding the transaction.

§ 7525 almost certainly does not apply for many of the same reasons that it did not apply for Document 44. The fact that Document 442 was written in conjunction with the preparation of a tax return is quite clear from statements such as "we are of the opinion that for U.S. federal income tax purposes it is more likely than not that . . . Investor would not be taxable . . . payments by Investor to Limited Partner under the Swap would not be subject to U.S. withholding tax." Doc. 442 at 9.

The Court finds that the attorney-client privilege may be applicable to Document 442, assuming that the law firm is employed by the taxpayer client or his/her company rather than by KPMG. (Without this assumption, which appears logical to make in this instance, the Court is faced with the question of whether advice provided by an in-house attorney is of primarily a *legal* nature or a *business* nature.) Examining only both the privilege log and the document itself, as the Court must in determining the validity of the privilege log, the Court believes that this has been established.

Document 442 does not fall under the attorney work product privilege, since there is no indication that it was prepared in anticipation of litigation.

In sum, only the attorney-client. privilege appears to apply to Document 442.

*Document 539.*

The Detailed Privilege Log states that Document 539 is a letter from an attorney at a law firm to a KPMG employee concerning the law firm opinion. The Court notes at the outset that Document 539 is generally a collection of selected pages from the overall law firm opinion, with editorial marks and comments on that opinion written in the margins. However, in spite of the fact that the Court has not examined the complete law firm opinion, the Court finds that the same general analyses that apply regarding Document 442 also apply to Document 539. Therefore, the Court comes to the same conclusion that only the attorney-client privilege appears to apply to Document 539.

*Document 540.*

Document 540 is very similar in relevant content to Document 539, and the Court's analysis there applies to Document 540.

*Document 822.*

The Detailed Privilege Log states that Document 822 is a legal opinion from an attorney at a law firm to a person at a company concerning tax advice regarding the transaction.

§ 7525 almost certainly does not apply, for it seems evident that Document 822 was written in conjunction with the preparation of a tax return. This is quite clear from statements such as "[t]his opinion is furnished to the addressee solely for use in determining the Federal income tax consequences of the transactions described herein . . . ." Doc. 822 at 57.

The Court finds that the attorney-client privilege may be applicable to Document 822, assuming that the law firm is employed by the taxpayer client(s) the individual and/or the company rather than by KPMG. Examining only both the privilege log and the document itself, the Court believes that this has been established.

Document 822 does not appear to fall under the attorney work product privilege, since there is no indication that it was prepared in anticipation of litigation.

In sum, only the attorney-client privilege appears to apply to Document 822.

*Document 839.*

The Detailed Privilege Log states that Document 839 is a legal opinion from a law firm to a company concerning tax advice regarding the transaction. The copy of Document 839 in the Court's possession is incomplete to the extent that it only goes to page 45, at the bottom of which is an incomplete sentence. This leads the Court to believe that there is at least one page missing from its copy of Document 839, and that perhaps an error occurred in the photocopying of that document. Nonetheless, through examining the first 45 pages of the document, § 7525 does not seem to apply. It seems evident that Document 839 was written in conjunction with the preparation of a tax return, in light of the opening statement: "You have requested our opinion regarding the U.S. Federal income tax consequences of certain investment portfolio transactions . . . ." Doc. 839 at 1. In a similar vein, the same determinations made by the Court for Document 822 regarding attorney-client privilege and attorney work product privilege apply to Document 839. Accordingly, the only the attorney-client privilege appears to apply to Document 839.

*Document 867.*

The Detailed Privilege Log states that Document 867 is an e-mail communication from a KPMG employee to various other KPMG employees, including at least one attorney, memorializing conversations about tax advice relating to the transaction.

Based on the limited information presented in the e-mail, the Court is unable to determine whether the § 7525 privilege applies.

In spite of the below discussion regarding attorney work product privilege and the mention of a "Tax Court" proceeding, most of Document 867 appears to relate to business strategy decisions, which do not fall under the attorney-client privilege.

Finally, Document 867 may very well fall under the attorney work product privilege, since there is an indication that it was prepared in anticipation of litigation occurring "AFTER the case is docketed in the Tax Court." Doc. 867.

### Documents re: Attorney– Client Privilege

*Document 1020.*

The Detailed Privilege Log states that Document 1020 is an e-mail communication among KPMG personnel, including at least one attorney, memorializing conversations referring to legal advice from KPMG Office of General Counsel regarding draft agreement for the OPIS transaction. Most of Document 1020 appears to relate to business strategy decisions, which do not fall under the attorney-client privilege. However, the Court cannot definitely determine that the privilege does not apply, in light of statements in the document related to the inclusion of "essential provisions" of a "proposed agreement." These statements could be related to legal advice, or merely to a business decision; however, the Court is simply unable to determine this answer from the document itself.

Therefore, the Court cannot confidently state that the privilege applies to Document 1020.

*Document 1021.*

As Document 1021 is merely a verbatim portion of Document 1020, the Court's analysis and conclusion for that document applies to Document 1021.

*Document 1024.*

Document 1024 is also a verbatim portion of Document 1020, but has attached a background form for investor information and a draft of an engagement letter. As neither attachment sheds any light on whether this document falls under the attorney-client privilege, the Court's analysis and conclusion for Document 1020 remains applicable to this document.

*Document 1025.*

As Document 1025 is merely a verbatim portion of Document 1020 with a minor addition (i.e., an e-mail from a KPMG employee with the words "I approve"), the Court's analysis and conclusion for that document applies to Document 1025.

*Document 1028.*

The Detailed Privilege Log states that Document 1028 is an e-mail communication among KPMG personnel, including at least one attorney, discussing drafting of KPMG agreement with a company. However, there is no information provided which indicates to the Court whether the statements in the e-mail are related to legal advice, or merely to a business decision. The Court is simply unable to determine this answer from the document itself, and therefore cannot confidently state that the privilege applies to Document 1028.

*Document 1145.*

As Document 1145 is merely a verbatim portion of Document 1020 that has been forwarded to an attorney within KPMG, the Court's analysis and conclusion for that document applies to Document 1145.

*Document 1146.*

Document 1146 appears to be an exact replica of Document 1020, with the minor exception that the e-mail header for the most recent e-mail message is slightly different in form. The Court's analysis and

conclusion for Document 1020 applies to Document 1146.

### Documents re: Attorney Work Product Doctrine

*Document 1142.*

The Detailed Privilege Log states that Document 1142 is a draft legal opinion from a law firm concerning tax advice regarding the transaction. The Court finds that Document 1142 does not fall under the attorney work product privilege, since there is no indication that it was prepared in anticipation of litigation.

*Document 1148.*

The Detailed Privilege Log states that Document 1148 is a confidential summary of the KPMG OPIS opinion letter. As there is no indication that it was prepared in anticipation of litigation, the Court cannot state that Document 1148 falls under the attorney work product privilege.

### Documents re: Attorney–Client Privilege & Attorney Work Product Doctrine

*Document 1136.*

The Detailed Privilege Log states that Document 1136 contains the following (in redacted form):

Memorandum from a KPMG employee to another person and a KPMG attorney soliciting comment on amendments to attached draft letter from a KPMG employee to an employee of a company, constituting operating agreement between KPMG and that company; e-mail communication from a KPMG employee to several individuals and a KPMG attorney discussing modifications to the company's operating agreement; and transmittal between KPMG employees with attached executed operating agreement between KPMG and the company's advisors.

The Court finds that the attorney-client privilege may apply here, as there are arguably legal issues regarding the terms of the agreement being discussed with a KPMG attorney.

The attorney work product privilege does not apply, since there is no indication that it was prepared in anticipation of litigation.

### Documents re: KPMG's "Own Privilege"

*Document 860.*

The Detailed Privilege Log states that Document 860 is a collection of e-mail communications among KPMG personnel, including one KPMG attorney, discussing legal advice regarding advisory agreement for a transaction.

The Court finds that while this document certainly touches on at least the fringes of business strategy, it appears to fall under the attorney-client privilege. Indeed, much of the language in the series of e-mails within the document deals with discussions of liability and indemnification language in the agreement, topics that are certainly within the realm of discussions with in-house counsel on legal advice.

*Document 861.*

As Document 861 is merely a verbatim portion of Document 860, the Court's analysis and conclusion for that document applies to Document 861.

*Document 862.*

The Detailed Privilege Log states that Document 862 is a collection of e-mail communications among KPMG personnel, including at least one member of the KPMG General Counsel's office, memorializing conversation regarding a transaction. The pertinent text of this document relates to indications of IRS activity regarding individual audits of tax shelter investors. While a strong argument may be made that this is a business strategy discussion, which would not fall under the attorney-client privilege, the Court sees no reason with this document to rebut the "presumption that a lawyer in the legal department or working for the general counsel is most often giving legal advice, while the opposite presumption applies to a lawyer ... who works for the Financial Group or some other seemingly management or business side of the house." *Boca Investerings,* 31 F.Supp.2d at 12. Therefore, the Court finds that the privilege applies to Document 862.

*Document 870.*

The Detailed Privilege Log states that Document 870 is a draft of an agreement between KPMG and an outside company, with blind copies to KPMG personnel, including at least one member of the KPMG General Counsel's office, relating to KPMG's relationship with that outside firm. Similar to Document 860, the Court finds that while this document certainly touches on at least the fringes of business strategy, it appears to fall under the attorney-client privilege. A significant portion of the language within the document deals with liability and indemnification language in the agreement, topics that are within the realm of discussions with in-house counsel on legal advice.

*Documents 1140–41, 1143–44.*

The Detailed Privilege Log states that Documents 1140–41 and 1143–44 are collections of e-mail communications among KPMG personnel, including at least one member of the KPMG General Counsel's office, referring to advice from the General Counsel's office regarding draft of an agreement with an outside company for a transaction. As these documents are merely different sized verbatim portions of Document 1020, the Court's analysis and conclusion for that document applies to Documents 1140–41 and 1143–44. Accord-

ingly, the Court cannot confidently state that the privilege applies to those documents.

## IV. CONCLUSION

█ For the reasons stated above, the Court can only state with confidence that four (4) out of thirty (30) (i.e., 13.3 percent) of the randomly selected privilege log entries are completely supportable. This is so even after a thorough *in camera* review and comparison of all thirty alleged privileged documents and their corresponding entries in the detailed privilege log prepared in response to the FLIP/OPIS summons. Consequently, the Court is referring this matter to retired Magistrate Judge Patrick J. Attridge, who has agreed to serve as a Special Master. Magistrate Judge Attridge will conduct an examination of the withheld documents, evaluate the asserted privileges, and submit a Report and Recommendation to the Court. The Court shall review that Report and Recommendation, and any objections thereto pursuant to Fed.R.Civ.P. 53, before rendering a decision on the Petition to Enforce Internal Revenue Service Summonses. In the interim, that Petition is held in abeyance.

KPMG shall turn over a copy of its entire privilege log, as well as complete copies of each document referenced in that privilege log, to Magistrate Judge Attridge. Both parties shall bear equally any costs and fees of this Special Master.

An appropriate Order will accompany this Opinion.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that KPMG shall turn over a copy of its entire privilege log, as well as complete copies of each document refer-enced in that privilege log, to retired Magistrate Judge Patrick J. Attridge, who has agreed to serve as a Special Master in this case. Magistrate Judge Attridge will conduct an examination of the withheld documents, evaluate the asserted privileges, and submit a Report and Recommendation to the Court. The Court shall review that Report and Recommendation, and any objections thereto pursuant to Fed.R.Civ.P. 53, before rendering a decision on the Petition to Enforce Internal Revenue Service Summonses. It is therefore

**ORDERED** that in the interim, that Petition is held in abeyance. It is further

**ORDERED** that both parties shall bear equally any costs and fees of this Special Master. It is further

**ORDERED** that counsel should contact this Court's chambers to arrange delivery of the documents to Magistrate Judge Attridge, who will have offices at this courthouse.

**SO ORDERED.**